**IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF NEBRASKA**

| | | |
|---|---|---|
| DAWN M. CLARY, | ) ) | CASE NO. _____ |
| Plaintiff, | ) ) | |
| vs. | ) ) | **COMPLAINT AND** |
| SPECTRUM BRANDS HOLDINGS, | ) ) | **DEMAND FOR JURY TRIAL** |
| INC. and TRISTAR PRODUCTS, INC. | ) ) | |
| Defendants. | ) ) | |

Plaintiff, by and through her attorneys, **Atwood, Holsten, Brown, Deaver, Spier & Israel, P.C., L.L.O.**, upon information and belief, at all times hereinafter mentioned, alleges as follows:

**PARTIES and SUBJECT MATTER JURISDICTION**

1.  Dawn M. Clary ("Plaintiff") is a resident of Bellevue, Sarpy County, Nebraska.

2.  Spectrum Brands Holdings, Inc. ("Spectrum") is a Delaware corporation that is a wholly owned subsidiary of SB/RH Holdings, LLC, which is a wholly owned subsidiary of Spectrum.

3.  Spectrum's principal place of business is 3001 Deming Way, Middleton, Wisconsin 53562.

4.  On February 18, 2022, Spectrum acquired all the membership interests in HPC Brands, LLC for a purchase price of $325 million plus potential earn-up payments. HPC Brands, LLC is the home appliances and cookware business of Tristar Products, Inc. ("Tristar").

5.  Tristar (formerly known as Tristar Innovative Products, Inc.) is a Florida Profit Corporation with its principal place of business located at 111 N. County Highway 393, Suite 203, Santa Rosa Beach, Florida 32459.

6.  Plaintiff is a citizen of Nebraska, Spectrum is a citizen of Delaware and Wisconsin, and Tristar is a citizen of Florida.

7.  The amount in controversy exceeds the sum of $75,000, exclusive of interests and costs.

8.  Accordingly, subject-matter jurisdiction is proper under 28 U.S.C. § 1332.

## PERSONAL JURISDICTION OVER SPECTRUM

9.  Plaintiff hereby incorporates by reference all preceding paragraphs.

10. Spectrum reported in its 2022 first quarter Security and Exchange Commission (SEC) Form 10-Q (hereinafter "Form 10-Q") that it "acquired substantially all of [Tristar's] operations, employees, and net assets" in the Spectrum/Tristar Acquisition.

11. Specifically, Spectrum outright acquired Tristar's PowerXL® brand and Tristar's Copper Chef® brand. It also acquired Tristar's Emeril Legasse® brand subject to a preexisting trademark license.

12. Spectrum then entered into a series of Transition Service Agreements ("TSAs") to support the remaining Tristar products that did not convey with the transaction.

13. Spectrum also assumed the cash accounts supporting both the acquired brands (*see* ¶ 11) and the excluded products. The cash flow from the acquired brands is comingled with the cash flow from the excluded products.

14. According to its second quarter Form 10-Q, Spectrum recognized income from these TSAs of $0.3 million or $300,000 during the three-month period ending July 3, 2022, and $0.8 million or $800,000 during the nine-month period ending July 3, 2022.

15. The product at issue in this litigation is Tristar's Power Quick Pot®, Model Y6D-36 (the "Pressure Cooker"). Spectrum did not name Power Quick Pot® in its Form 10-Q as one of

the brands it acquired in its acquisition of HPC Brands, LLC. Accordingly, it appears that Spectrum entered into a TSA with Tristar to support Power Quick Pot®.

16. Spectrum is a world-wide company that describes itself as a "global consumer products company." It asserts that it sends its products to "millions of consumers all over the world."

17. With Spectrum's support, Tristar continues to sell Power Quick Pot® pressure cookers. For example, as of July 2022, it was still possible to buy a Power Quick Pot® through Sears, Walmart, or Amazon. Cash proceeds from these sales appear to enter accounts that Spectrum assumed in the Tristar acquisition.

18. Sears, Walmart, and Amazon are national distributors that ship Power Quick Pot® pressure cookers to Nebraska.

19. Spectrum and Tristar are alter egos. Spectrum is sending products, through Tristar, into the stream of commerce to reach Nebraska.

20. Accordingly, personal jurisdiction over Spectrum is proper under the Due Process Clause and NEB. REV. STAT. § 25-536.

## PERSONAL JURISDICTION OVER TRISTAR

21. Plaintiff hereby incorporates by reference all preceding paragraphs.

22. Tristar first introduced its line of Power Quick Pot® pressure cookers in 2018. The pressure cookers were originally available in 6-, 8-, and 10-quart units. Tristar later added a 4-qt unit. The Pressure Cooker is a 6-qt Power Quick Pot®.

23. Tristar intended to reach Nebraska consumers with its ubiquitous, national marketing campaign. Specifically, it utilized numerous media outlets including television infomercials, YouTube, third-party retailers, and professional chef endorsements to advertise its Power Quick Pot® pressure cookers.

24. On its website, Tristar asserts that it "has established domestic . . . market dominance using a 360-degree approach that includes online, social media, TV media, and retail distribution in major retailers around the world, including Walmart; Sam's Club; Bed, Bath & Beyond; Amazon; QVC; Target; and many more."

25. Walmart, Sam's Club, Bed, Bath & Beyond, Amazon, QVC, and Target are all national distributers that ship Power Quick Pot® pressure cookers to Nebraska.

26. In addition, Tristar specifically lists Walmart as one of the retailers that it partners with to distribute its products.

27. Plaintiff purchased the Pressure Cooker from a Walmart in Bellevue, Nebraska. She exclusively used the Pressure Cooker in her home in Nebraska and sustained her injuries from the Pressure Cooker in Nebraska.

28. Tristar purposefully inserted the Pressure Cooker into the stream of commerce with the intent of reaching Nebraskan consumers like Plaintiff. Nebraska has a special interest in protecting its citizens from dangerous, faulty products.

29. Accordingly, this Court has personal jurisdiction over Tristar under the Due Process Clause and NEB. REV. STAT. § 25-536.

## FACTS

30. Plaintiff hereby incorporates by reference all preceding paragraphs.

31. Plaintiff bought the Pressure Cooker in April or May, 2020. It quickly began a staple in her home and she used it according to Tristar's instructions for the next three or four months without any issues.

32. Tristar distributes operating instructions to its consumers in the Power Quick Pot® owner's manual. These operating instructions instruct the user that the Power Quick Pot® will beep when it finishes its cooking cycle. Once the unit beeps, the user should move the "Steam Release Switch" to "Open." The pressure cooker is supposedly designed to release all of its pressurized steam before the user can open the lid.

33. Specifically, Tristar asserts in this manual that "[i]f there is steam/pressure coming out of the [p]ressure [r]elease [v]alve or [the user's] hand is still holding the [s]team [r]elease [s]witch in the Open position, the [l]id **will not** slide to open." (emphasis added).

34. On July 17, 2020, Plaintiff used the Pressure Cooker to cook a roast for her family. She had previously, frequently used the Pressure Cooker to cook this exact meal with the same ingredients. The Pressure Cooker beeped that it was done and she opened the pressure release valve. She waited for the steam to dissipate before **easily** opening the lid.

35. Then, the Pressure Cooker exploded, spewing hot steam and liquid onto her face, chest, and arms.

36. Plaintiff rushed to the University of Nebraska Medical Center (UNMC) emergency room, where she was diagnosed with partial-thickness, full-thickness, second-degree, and third-degree burns.

37. As a direct and proximate result of Tristar's conduct, Plaintiff suffered significant and painful bodily injuries, medical expenses, lost wages, physical pain, mental anguish, and diminished enjoyment of life.

## COUNT I
*Strict Product Liability: Defective Design*

38. Plaintiff hereby incorporates by reference all preceding paragraphs.

39. Tristar allegedly designed the Pressure Cooker so that the user cannot open the lid when the unit is pressurized.

40. Specifically, a magnetic sensor monitors whether the lid is fully closed. The Pressure Cooker will beep and display on its monitor "LID" if the magnetic sensor detects that the lid is not closed.

41. Once the lid is fully closed, the Pressure Cooker begins heating and subsequently pressurizing. As pressure increases in the unit, increasing steam pushes the floating valve upwards into a hole in the strike plate.

42. The strike plate is internally spring biased and connected to a locking pin that slides along the outer surface of one of the base unit's locking lugs. Once the floating valve enters the strike plate hole, the strike plate is blocked from extending outwardly, which supposedly prevents the locking pin from sliding on the locking lug's outer surface, thereby preventing rotation of the lid toward its open position. In other words, the floating valve and strike plate are designed to work together to lock the lid onto the base while the unit is pressurized.

43. Excessive clearances in the locking pin mechanism and the insufficient stiffness of the strike plate component, however, mean that these measures do not lock the lid to the base while the unit is pressurized. Instead, the Pressure Cooker's lid remains easily removeable at dangerously high pressures.

44. Despite this flaw, the Pressure Cooker will pressurize. During the cooking cycle, it self-monitors to release excess pressure, if necessary, through heat reduction and steam release.

When the Pressure Cooker finishes its cooking cycle, it beeps at the user. Then, the user may choose between natural and rapid release to depressurize the Pressure Cooker.

45. Natural release permits the pressure inside the cooker to release on its own. This process continues cooking the food inside the unit and can take between 20 minutes to an hour.

46. Plaintiff utilized rapid release. Rapid release requires the user to cancel the cooking cycle. Then the user slides open the steam release switch and waits for the steam to release.

47. Tristar implemented a two-step "security" system to protect consumers using quick release. This system purportedly prevents the lid from opening if the consumer's hand is holding the steam release switch in the open position. It also purportedly prevents the lid from opening if there is steam or pressure coming out of the pressure release valve.

48. First, the Pressure Cooker remains easily openable even if the consumer is holding the steam release switch open. In fact, manually rotating the lid toward the open position will cause the switch to move towards the open position on its own as the locking pin rides up the 45-degree locking lug ramp. Holding the switch in "open" does not impact the consumer's ability to move the lid from its fully closed to its fully open position.

49. Second, holes in the lid's inner liner allow food to rise up through the lid and into the pressure release valve and floating valve. This clogs the valves, preventing the second safety measure from functioning. Moreover, the only way for the consumer to determine if the Pressure Cooker is depressurized is to visually watch for steam venting from the unit. When this valve is clogged, the consumer is unaware that steam remains in the unit. Since the lid remains easily openable despite the remaining pressure, the unaware consumer can open the lid early, causing the Pressure Cooker's contents to explode out of the cooker.

50. A groove ("witness mark") on the locking lug of Plaintiff's unit demonstrates that the Pressure Cooker's lid was rotated between the closed and open positions while the float valve was extended. In other words, Plaintiff was able to open the Pressure Cooker while the unit was pressurized because she trusted Tristar's promises to keep her safe.

51. Moreover, Plaintiff's unit's pressure valve was clogged. This is why Plaintiff did not see any steam venting from the unit before she opened the lid. Tristar's defective locking mechanism and internal steam venting designs failed to prevent the consumer from unknowingly removing the lid from the pressurized cooker, resulting in the expulsion of the contents of the Pressure Cooker onto Plaintiff's face and body.

52. Tristar placed the Pressure Cooker in the market for use. It knew, or should have known, that consumers would not inspect the Pressure Cooker for defects. Tristar was in the best position to inspect the Pressure Cooker for defects before it distributed the unit to innocent consumers. Ordinary consumers cannot and are not expected to test their pressure cookers for complex, internal defects.

53. Plaintiff used the Pressure Cooker in the way and for the general purpose for which it was designed and intended. Tristar's defective design rendered the Pressure Cooker unreasonably dangerous and unsafe for this intended use.

54. Tristar's defective design is the direct and proximate cause of Plaintiff's injuries.

**COUNT II**
*Negligence*

55. Plaintiff hereby incorporates by reference all preceding paragraphs.

56. At the time that Tristar manufactured the Pressure Cooker, there were a variety of feasible, safer alternative designs Tristar could have utilized. Tristar negligently breached its duty to keep its consumers like Plaintiff safe by not designing a safer pressure cooker.

57. Specifically, Tristar could and should have:

    a. Reduced the lid locking mechanism's clearances and increased the strike plate's stiffness so that the user could not override the deadbolt function by rotating the lid; and,

    b. Installed a pressure sensor or readily visible indicator that indicates when the unit is pressurized.

58. These measures are clearly feasible because Tristar recently implemented some of these safety measures in its newer pressure cookers. The 6-, 8-, and 10-quart Power Pressure Cooker XL® (respectively, model numbers PPC771, 772, and 773) all have pressure indicators that alert the consumer to pressure inside the unit. These models also incorporate more robust lid locking mechanisms that cannot be easily defeated by consumers and lid sensors that prevent the pressure cooker from heating to dangerous levels when the lid is unlocked.

59. Notably, the pressure indicator on these newer models utilize the same technology as the float valve system installed in the Pressure Cooker. The only change is that the rising pressure in the unit pushes the red indicator up outside of the lid so that the consumer can easily see that the unit remains pressurized.

60. Moreover, the 6- and 8-quart Power Pressure Cooker XL® contain a float value/lid safety with a tightened tolerance. This means that consumers are no longer exposed to the dangers of a defective, misleading deadbolt because they can no longer open the cooker's lid when the float valve is extended.

61. It is also possible to improve the locking mechanism by lengthening the locking pin, equipping it with a plastic knob, and re-shaping the 45-degree locking groove ramp that

the inner portion of the locking pin must climb when opening the Pressure Cooker's lid. By re-shaping this locking groove ramp to a 90-degree angle, a consumer can no longer defeat the deadbolt function of the float valve by rotating the lid toward the open position. Now, the consumer must pull on the knob and rotate the lid. Pulling on the knob reduces the amount of rotational force that the consumer can apply to the lid. Moreover, the consumer cannot retract the knob if the float valve is extended through the strike plate because the consumer cannot pull on the knob with enough force.

62. Tristar owes a duty of reasonable care to design, manufacture, inspect, test, market, distribute, and sell non-defective pressure cookers that are reasonably safe for their intended use.

63. Tristar knew, or in the existence of ordinary care, should have known, that the Pressure Cooker was defective and unreasonably dangerous to those persons likely to use the product for the purpose and in the manner of its intended use.

64. Tristar negligently breached its duties to Plaintiff. This breach is the direct and proximate cause of Plaintiff's injuries.

## COUNT III
### *Breach of Express Warranty*

65. Plaintiff hereby incorporates by reference all preceding paragraphs.

66. Tristar asserts in its Power Quick Pot® owner's manual that the Pressure Cooker has a variety of "built-in safety devices." In relevant part, it asserts that there is a:

> **TWO-STEP SECURITY RESET FOR QUICK RELEASE:** The Steam Release Switch needs to be slid once to release the steam and then let go to open the Lid. If there is steam/pressure coming out of the Pressure Release Valve or your hand is still holding the Steam Release Switch in the Open position, *the Lid will not slide to open*.

(emphasis added).

67. This statement is false. The Pressure Cooker's lid can and did rotate from its fully closed position to its fully open position even when the user holds the steam release switch in its "open" position.

68. In fact, manually rotating the lid to open the Pressure Cooker actually also independently moves the steam release switch to its "open" position as the locking pin rotates up the 45-degree locking lug ramp.

69. In addition, Tristar indicated on the Pressure Cooker itself that the unit is UL listed. UL Solutions ("UL") is a global safety certification company. Its certification indicates that a product complies with regulated safety standards.

70. Specifically, UL requires that its electric pressure cookers comply with a 100-pound lid locking requirement. The Pressure Cooker does not comply with this requirement because the user can easily rotate and open its lid while the unit is pressurized.

71. This marking indicating that the Pressure Cooker complies with UL's certification requirements misleads the consumer into believing the unit's lid locking feature effectively locks the lid when the contents are pressurized.

72. Tristar affirmed a fact or promise about its Pressure Cooker or described the Pressure Cooker in a way to Plaintiff that became the basis of parties' bargain.

73. Plaintiff relied on Tristar's promises that the Pressure Cooker was UL listed and that the lid would not open while the unit was pressurized.

74. Tristar breached its express warranties to Plaintiff, directly and proximately causing Plaintiff's damages.

## COUNT IV
*Breach of Implied Warranty of Merchantability*

75. Plaintiff hereby incorporates by reference all preceding paragraphs.

76. Tristar lists twenty-two different models of electric cookers and pressure cookers on its website. It also sells miscellaneous cooking items such as air fryers, coffee makers, grills, juicers, blenders, pasta makers, etc. It boasts on its website that it has received "over $1 billion in retail sales" from its products.

77. In one of its promotional videos for the Power Quick Pot®, Tristar attempts to attract consumers by asserting:

> If you've given up on home cooking because you just don't have the time. If you can't stand the effort it takes to prep and then clean countless pots and pans. Those excuses end right now. Because if you can push a button, you can make fabulous meals like this, fast! In one pot! Introducing the all-new Power Quick Pot®. A breakthrough innovation in kitchen technology that makes preparing mouth-watering homecooked meals easy.

78. Plaintiff purchased the Pressure Cooker to prepare home-cooked meals for her family. She was injured when the Pressure Cooker exploded while she was using it to prepare a roast.

79. Tristar deals in pressure cookers like the Pressure Cooker at issue in this litigation. Tristar also holds itself out as having knowledge or skill peculiar to the Pressure Cooker involved in this transaction.

80. Tristar is a merchant with regards to the Pressure Cooker.

81. Tristar's Pressure Cooker is unmerchantable. It is not fit for its ordinary purpose to cook food under pressure.

## COUNT V
### *Failure to Warn*

82. Plaintiff hereby incorporates by reference all preceding paragraphs.

83. As discussed *supra*, design defects in the Pressure Cooker permitted Plaintiff to open the Pressure Cooker's lid while it was still pressurized. As a result, the Pressure Cooker exploded in Plaintiff's face.

84. Tristar provided a series of warnings in the Pressure Cooker's owner's manual. Specifically, it warned the user to:

> **NEVER FORCE THE LID OPEN.** Never attempt to open Lid during operation as a pressure cooker. Any pressure in the cooker can be hazardous. Do not open the pressure cooker until Unit has cooled and all internal pressure has been released. If the lid is difficult to open, this indicates that the Unit is still under pressure - do not force it open. Once pressure is released, follow instructions to open Lid. Always open Lid away from face and body to avoid steam burns (see **OPERATING INSTRUCTIONS**, p.16).

It also warned the user that the "Lid should rotate freely and any resistance indicates that the Lid is improperly placed or under pressure." (emphasis removed).

85. These warnings inform the user that the lid is difficult to open when the Pressure Cooker is pressurized. This is inaccurate because the Pressure Cooker's lid easily opens while pressurized.

86. Tristar should have clearly warned its users that the Pressure Cooker's lid would remain easily openable while the unit was pressurized.

87. In addition, Tristar warned the user in the owner's manual that the user should check to ensure that "the [p]ressure [r]elease [v]alve is free from debris" before operating the Pressure Cooker. It warned again that the user should "[a]lways check the pressure release devices for clogging before use."

88. These warnings are not clearly visible to the consumer. Neither warning is bolded or written in a larger font. Instead, these warnings are hidden in a long list of 27 other warnings in the owner's manual.

89. Moreover, since a user can easily remove the Pressure Cooker's lid while the unit is pressurized, it is vital that Tristar warn the user that their safety depends on ensuring that the pressure release valve remains unclogged. As discussed *supra*, the consumer visually looks for steam venting from the unit to determine whether the cooker remains pressurized. When the pressure release valve is clogged, there is no longer steam visibly venting from the unit. The consumer will rely on this misleading lack of steam to open the lid while the cooker is pressurized.

90. Tristar knew or had reason to know that the Pressure Cooker was dangerous when used as a pressure cooker. Tristar also knew or had reason to know that the consumer who purchased the Pressure Cooker would not realize the danger that the Pressure Cooker presents.

91. Tristar failed to provide reasonably foreseeable users of the Pressure Cooker with adequate warning of the danger that the Pressure Cooker presents. This failure to warn is the direct and proximate cause of Plaintiff's damages.

**WHEREFORE**, Plaintiff requests a trial by jury and prays for judgment against the Defendants on Plaintiff's product liability, negligence, breach of express warranty, breach of implied warranty, and failure to warn claims. In addition, Plaintiff prays the Court grant Plaintiff $143,039 in lost wages, at least $6,621.47 in medical bills, any and all general damages, and the costs of this suit. Finally, Plaintiff further prays for all other relief, of either a legal or equitable nature, to which she is justly entitled.

**DATED** this 18th day of October, 2022.


DAWN M. CLARY, Plaintiff


BY: **s/ Corey Stull**
      Bar Number: 21336
      Attorney for Plaintiff
      Atwood, Holsten, Brown,
      Deaver, Spier & Israel Law Firm, P.C., L.L.O.
      575 Fallbrook Blvd., Ste. 206
      Lincoln, NE  68521
      Telephone: (402) 476-4400
      Fax: (402) 476-4410
      E-mail: cstull@atwoodlawyers.com