IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| DAWN M. CLARY,<br><br>      Plaintiff,<br><br>vs.<br><br>SPECTRUM BRANDS HOLDINGS, INC. and TRISTAR PRODUCTS, INC.,<br><br>      Defendants. | 4:22-CV-3230<br><br>MEMORANDUM AND ORDER |

The plaintiff, Dawn Clary, sued the defendants, Spectrum Brands Holdings, Inc. (Spectrum) and Tristar Products, Inc., to recover for injuries she suffered after her pressure cooker exploded. The plaintiff alleges products liability claims premised on theories of defective design, negligence, breach of warranty, and failure to warn. *See* filing 1. This matter is before the Court on Spectrum's motion to dismiss for lack of personal jurisdiction pursuant to Fed. R. Civ. P. 12(b)(2). Filing 10. The motion will be granted.

I. STANDARD OF REVIEW

When jurisdiction is challenged on a pretrial motion to dismiss, the plaintiff need only make a prima facie showing of jurisdiction. *Pangaea, Inc. v. Flying Burrito LLC*, 647 F.3d 741, 745 (8th Cir. 2011); *Miller v. Nippon Carbon Co.*, 528 F.3d 1087, 1090 (8th Cir. 2008). The evidence is viewed in the light most favorable to the plaintiff. *Viasystems, Inc. v. EBM-Papst St. Georgen GmbH & Co.*, 646 F.3d 589, 592 (8th Cir. 2011). Nonetheless, if the defendant controverts or denies jurisdiction, the plaintiff still carries the burden of proof. *See, id.*; *Wells Dairy, Inc. v. Food Movers Int'l, Inc.*, 607 F.3d 515, 518 (8th Cir.

2010); *Miller*, 528 F.3d at 1090. The plaintiff's prima facie showing must be tested, not by the pleadings alone, but by the affidavits and exhibits presented with the motions and opposition thereto. *Miller*, 528 F.3d at 1090; *Coen v. Coen*, 509 F.3d 900, 904-05 (8th Cir. 2007).

## II. BACKGROUND

Tristar is a privately-owned Florida corporation involved in, among other things, designing, manufacturing, and selling pressure cookers in retail stores like Walmart and Target, and in online stores like Amazon and QVC. Filing 1 at 4; filing 11 at 2; filing 26. The plaintiff purchased a Tristar "Power Quick Pot" pressure cooker in Bellevue, Nebraska, in April or May of 2020. Filing 1 at 4. On July 17, 2020, while in her home in Bellevue, the plaintiff alleges she suffered second-and-third-degree burns after the pressure cooker exploded. Filing 1 at 5.

In February 2022, Tristar sold substantially all of its assets to Spectrum Brands, Inc. Filing 1 at 2; filing 12-1 at 2. Spectrum Brands, a Delaware corporation with its principal place of business in Wisconsin, is a wholly-owned subsidiary of defendant Spectrum. Filing 11 at 8; filing 1 at 1. Spectrum is a publicly traded company, also incorporated under Delaware law with its principal place of business in Wisconsin. Filing 11 at 8; filing 25.

Spectrum Brands acquired some of Tristar's product lines outright, and others are subject to "Transition Service Agreements." According to the plaintiff, these agreements allow Spectrum to "support" Tristar's sales in Nebraska, and Spectrum recognizes significant income from selling Tristar's products through the agreements. Filing 15 at 1-2. Spectrum assumed Tristar's cash accounts, which include funds from the sales of pressure cookers. Filing 1 at 2. The Power Quick Pot pressure cooker line was not acquired outright, so the plaintiff alleges "it appears that Spectrum entered into" an agreement with

Tristar to "support" that product line. Filing 1 at 2-3. Spectrum asserts it does not have such an agreement regarding the Power Quick Pot line. Filing 12-1 at 2.

The plaintiff sued for her 2020 injuries after Spectrum's acquisition of Tristar. Filing 1 at 1. Spectrum asserts this Court lacks jurisdiction. Filing 10. Tristar does not challenge jurisdiction. *See* filing 18.

### III. DISCUSSION

Spectrum moved to dismiss the plaintiff's complaint, arguing the Court lacks personal jurisdiction. Filing 10. The plaintiff argues under the "alter ego" theory, and alternatively under a stream of commerce theory, Spectrum has maintained enough contacts with the state of Nebraska to justify personal jurisdiction.

In order to satisfy the Due Process Clause and justify personal jurisdiction, a defendant must have minimum contacts with the forum state such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice.[1] *Pangaea*, 647 F.3d at 745; *see also Dairy Farmers*, 702 F.3d at 477. Jurisdiction is proper where the contacts proximately result from actions by the defendant itself that create a substantial connection with the forum state. *Id.* at 694. The minimum contacts necessary for due process may be the basis for either "general" or "specific" jurisdiction. *Dairy Farmers*, 702 F.3d at 475; *Johnson v. Arden*, 614 F.3d 785, 794 (8th Cir. 2010).

---

[1] Nebraska's long-arm statute extends to the fullest extent permitted by the Due Process Clause, so the inquiry into personal jurisdiction collapses into the due process analysis. *See Fastpath, Inc. v. Arbela Techs. Corp.*, 760 F.3d 816, 820 (8th Cir. 2014); *RFD-TV, LLC v. WildOpenWest Finance, LLC*, 849 N.W.2d 107, 114 (Neb. 2014).

3

The parties appear to agree that Spectrum is not subject to general jurisdiction in Nebraska (*see* filing 15 at 3; *Daimler AG v. Bauman,* 571 U.S. 117, 127 (2014)) and instead disagree as to whether Spectrum has enough contacts with Nebraska related to the plaintiff's claim to justify specific jurisdiction. Specific jurisdiction exists over a nonresident defendant that has purposefully availed itself of the privilege of conducting business in the forum in a suit arising out of or related to the defendant's contacts with the forum. *See Pangaea,* 647 F.3d at 745-46; *Johnson,* 614 F.3d at 794-95. It is essential in each case that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum state, thus invoking the benefits and protections of its laws. *Dairy Farmers,* 702 F.3d at 477.

The plaintiff does not allege any independent contacts that Spectrum has with the state of Nebraska, and instead argues that the relationship between Spectrum and its subsidiary Tristar justify imputing Tristar's contacts to Spectrum.

## ALTER EGO

A subsidiary's contacts can be attributed to a parent if the subsidiary is an "alter ego" of the parent. Whether a subsidiary is an alter ego "is contingent on the ability of the plaintiff[] to pierce the corporate veil." *Epps v. Stewart Info. Serv. Corp.,* 327 F.3d 642, 649 (8th Cir. 2003); *see also Viasystems,* 646 F.3d at 596. The alter ego doctrine is an "extraordinary measure" reserved for "exceptional circumstances." *Goellner-Grant v. Platinum Equity LLC,* 341 F. Supp. 3d 1022, 1029 (E.D. Mo. 2018) (quoting *HOK Sport, Inc. v. FC Des Moines, L.C.,* 495 F.3d 927, 935 (8th Cir. 2007)). The fundamental inquiry remains whether the defendant has purposefully availed itself of the benefits

4

and protections of the forum state to such a degree that it should reasonably anticipate being haled into court there. *Viasystems*, 646 F.3d at 594.

Spectrum asserts neither it nor its subsidiary Spectrum Brands acquired the pressure cooker line which allegedly caused the plaintiff's injuries. Filing 11 at 8. This assertion is supported by the affidavit of James Patullo, former vice president of Spectrum Brands. Filing 12-1 at 2. The plaintiff's contrary assertion, on the other hand, is speculative at best. The plaintiff has not provided a copy of the alleged Transition Service Agreement that governs the relationship between Spectrum and the pressure cooker line at issue. Instead, the plaintiff assumes that such an agreement must exist based solely on Spectrum's acquisition of substantially all of Tristar's assets. *See* filing 1 at 2-3.

Even if Spectrum did acquire Tristar's pressure cooker line, the plaintiff's allegations regarding Spectrum's control over Tristar's operations are scant. The plaintiff primarily relies on Spectrum's Transition Service Agreements with Tristar to argue that Tristar is Spectrum's alter ego. Filing 15 at 3-4. She alleges that Spectrum lends some unspecified "support" to Tristar in its sales in Nebraska, and Spectrum allegedly comingles Tristar's profits with its own. *See* filing 15 at 6. Apparently, without this support, Tristar would not be able to do business in Nebraska. *See* filing 1 at 3.

The plaintiff has not carried her burden of showing Tristar is an alter ego of Spectrum. *Cf. Viasystems*, 646 F.3d at 596. Merely sharing in profits from a product is insufficient to pierce the corporate veil. *See Goellner-Grant*, 341 F. Supp. 3d at 1029. Nor can oversight of marketing, use of a shared trademarked logo, or sharing human resource and information technology services satisfy the "high-level operational control" over subsidiaries which justify the alter ego doctrine. *In re Enterprise Rent-A-Car Wage & Hour*

*Employment Practices Litigation*, 735 F. Supp. 2d 277, 323-34 (W.D. Pa. 2010); *see also Prescott v. LivaNova PLC*, No. 4:16-cv-472, 2017 WL 2591270, at *3 (S.D. Iowa June 12, 2017); *Bates v. Bankers Life and Cas. Co.*, 993 F. Supp. 2d 1318, 1335-36 (D. Or. 2014); *Ranza v. Nike, Inc.*, 793 F.3d 1059 (9th Cir. 2015). It is unclear what, exactly, the plaintiff means by "support," and she has offered no documentation to explain her allegations. *See Miller*, 528 F.3d at 1090. These minimal and conclusory assertions do not demonstrate the "extraordinary circumstances" needed to allow the Court to disregard the corporate form. *Cf. Goellner-Grant,* 341 F. Supp. 3d at 1029.

### STREAM OF COMMERCE

The plaintiff also appears to argue that by placing Tristar's pressure cookers in the stream of commerce, Spectrum has availed itself of Nebraska's jurisdiction. *See* filing 15 at 4. Personal jurisdiction may be found where a seller uses a distribution network to deliver its products into the stream of commerce with the expectation that the products will be purchased by consumers in the forum state. *E.g., Clune v. Alimak AB,* 233 F.3d 538, 542 (8th Cir. 2000). But the plaintiff does not allege that Spectrum manufactures, distributes, ships, or otherwise makes available Tristar's pressure cookers in Nebraska, except through its alleged "support" of Tristar. Filing 15 at 4. The plaintiff's stream of commerce theory again attempts to impute Tristar's contacts to Spectrum. *See* filing 1 at 3. For the same reasons described above, the contacts cannot be so imputed.

Construed generously, the plaintiff's theory *might* be that Spectrum took over Tristar's distribution networks, and now Spectrum is the entity responsible for placing Tristar's products, including the pressure cooker line, in Nebraska's stream of commerce through national distributors. *See* filing 1 at 3. Assuming without deciding that Spectrum could be haled into court for

an injury which occurred prior to Spectrum's acquisition of the allegedly defective product, the Court must find that Spectrum has done enough, through the alleged distribution and "support" of Tristar's products, to satisfy the minimum contacts due process requirement.

In *Clune*, 233 F.3d at 543-44, the Court of Appeals allowed jurisdiction over a Swedish manufacturer which (1) designed an allegedly defective product, (2) had distribution agreements with U.S. distributers, (3) placed its logo on the products sold in the forum state, (4) trained service technicians for the product, and (5) had between twenty and forty of the allegedly defective products in the forum state. The Court held that together, these facts showed the manufacturer had the requisite minimum contacts with the forum state, but any "of these facts, taken alone, might fall short of purposeful availment." *Id.*; *cf. Vandelune v. 4B Elevator Components Unlimited*, 148 F.3d 943, 948 (8th Cir. 1998).

The plaintiff in this case, however, at best alleges that Spectrum helps Tristar to sell its pressure cookers to national distributors like Sears, Walmart, and Amazon. Filing 1 at 3. Spectrum is not alleged to manufacture, design, market, train service technicians about, place its logo on, or do anything else with the allegedly defective pressure cooker line. Spectrum is not alleged to be a party to any distribution agreement. Spectrum is not alleged to distribute or sell the products, except to "support" Tristar's sale of pressure cookers to national distributers. The plaintiff relies on *Zo Skin Health, Inc. v. Skincare Mkt, Inc.*, No. 8:21-cv-3196, 2022 WL 179678, at *4 (D. Neb. Jan. 20, 2022), to support her argument. *See* filing 15 at 4. In that case, the court found that fifteen sales of the product at issue were sufficient to justify personal jurisdiction over the defendant. But here, the plaintiff has not alleged that

7

Spectrum has made *any* sales – only that its subsidiary has. *Cf. Clune*, 233 F.3d at 544.

The plaintiff has not demonstrated, on any theory, that Spectrum, or its wholly-owned subsidiary Spectrum Brands, as independent entities, have done anything related to the present litigation purposefully availing them of the laws of Nebraska. Granting the plaintiff leave to amend her complaint to substitute Spectrum Brands for Spectrum will not resolve the jurisdictional issues discussed here. Accordingly,

IT IS ORDERED:

1. The defendant's motion to dismiss for lack of personal jurisdiction (filing 10) is granted.

2. The plaintiff's claims are dismissed against Spectrum Brands Holdings, Inc., without prejudice.

3. This matter is referred to the Magistrate Judge for case progression.

Dated this 19th day of May, 2023.

BY THE COURT:

John M. Gerrard
Senior United States District Judge