IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| DAWN M. CLARY,<br><br>                Plaintiff,<br><br>vs.<br><br>TRISTAR PRODUCTS, INC.,<br><br>                Defendant. | 4:22CV3230<br><br>MEMORANDUM AND ORDER |

This matter is before the Court on Plaintiff's Motion to Exclude Testimony of Robert Giachetti, Ph.D. (Filing No. 81). For the reasons stated below, the motion will be granted in part.

### FACTUAL BACKGROUND

This action arises from an explosion and resulting injuries Ms. Clary incurred while using a Power Quick Pot model Y6D-36 pressure cooker (the "pressure cooker"), marketed and distributed by Defendant Tristar Products, Inc. ("Tristar"). (Filing No. 1; Filing No. 80-4 at 9.)

Dawn Clary alleges she used the pressure cooker to make a meal on July 17, 2020. (Filing No. 1). When the pressure cooker finished cooking, she released the pressure cooker's steam valve and waited until the steam exited before opening the device. (Filing No. 86-1 at 10.) After steam had stopped exiting the valve, Ms. Clary allegedly grabbed the pressure cooker's lid and rotated the lid to the open position. (Filing No. 86-1 at 10.) The lid then blew off, and the pressure cooker's contents exploded onto her, burning her face, chest, and arms (the "explosion"). (Filing No. 86-1 at 10-11.) Ms. Clary has brought this action against Tristar for her injuries from the explosion, alleging defective design, negligence, breach of express warranty, breach of implied warranty of merchantability, and failure to warn. (Filing No. 1.)

The present motion seeks to exclude parts of the testimony of Dr. Robert Giachetti, Tristar's expert witness. (Filing No. 81.) Ms. Clary moves to exclude Dr. Robert Giachetti's "opinions as to the placement of Plaintiff's arms at the time of the explosion." (Filing No. 81.) Specifically, Ms. Clary seeks to exclude Dr. Giachetti's "opinion that Plaintiff's arms were on the base of the machine[.]" (Filing No. 81.)

Dr. Giachetti is a licensed professional engineer who holds a Ph.D., M.S. and B.S. in Mechanical Engineering. (Filing No. 86-7.) Dr. Giachetti "specializes in biomechanics, human performance, machine design, and dynamic systems." (Filing No. 86-7.) His educational background has "a heavy emphasis on dynamics," the study of how things move and are moved. (Filing No. 86-8 at 12.) He has "substantial education and teaching experience in areas related to human movement, human muscular control, postural dynamics, and solid and fluid dynamics." (Filing No. 86-8 at 12.) He has previously testified as an expert witness in "numerous cases regarding human movement and effort generation." (Filing No. 86-8 at 13.) He has participated in "numerous joint examinations of pressure cookers" and performed independent research on the trajectory of expulsed contents from a pressurized pressure cooker and its potential for scald injuries, which was published in the Journal of Burns. (Filing No. 86-8 at 13; Filing No. 84-4.) Per Dr. Giachetti, his "experience, training, education, publications and research" qualify him to render opinions regarding burn causation. (Filing No. 86-8 at 3.)

Dr. Giachetti opines that Ms. Clary's testimony and discovery responses are inconsistent with her burns and the testing of the pressure cooker. (Filing No. 84-3 at 19.) In her deposition, Ms. Clary testified that she had her hands on the pressure cooker's lid right before its contents exploded onto her. (Filing No. 86-1 at 10.) According to Dr. Giachetti, however, Ms. Clary's burns were consistent with her looking downwards with "her hands on the base" of the pressure cooker, not on the lid:

> Had her hands been on the lid performing an opening effort when the cover opened, her forearms would have been in the direct path of the escaping contents, however, she did not sustain severe burns to her forearms. With an energetic dispersion as is expected with a 3PSI release, the contents ejected from the pressure cooker without flowing over the side, avoiding her hands and forearms.

(Filing No. 84-3 at 19.)

Dr. Giachetti asserts his analysis and conclusion rely on "two simple scientific facts:" (1) burns occur where "hot fluid touches the skin," and (2) fluid exits a pressure cooker "without passing through the walls or lid of the pressure cooker[.]" (Filing No. 86-8 at 5.) Relying on his published study, which tracked the trajectory of water emitting from a pressurized pressure cooker onto a 50th percentile female mannequin, Dr. Giachetti concluded Ms. Clary's hands and arms

2

would have been "in the direct path of the broadly escaping contents and should be severely scalded" if she had her hands placed on the lid at the time of the explosion. (Filing No. 86-8 at 6-8).

To determine whether Ms. Clary had been severely scalded in the explosion, Dr. Giachetti "relied upon the medical records to ascertain the locations of burns diagnosed by medical professionals." (Filing No. 86-8 at 2.) Dr. Giachetti declared, "My experience, training, education, publications and research qualifies me to render opinions regarding burn causation . . . I do not diagnose injury." (Filing No. 86-8 at 3.) Dr. Giachetti does not perform "burn pattern" analysis, which analyzes the type of contact that caused scalding. (Filing No. 86-8 at 3.) His analysis instead "examines the bulk overall placement of burns." (Filing No. 86-8 at 3.)

Ms. Clary's medical records indicate Ms. Clary had partial-thickness burns to her face on her nose and chin and on her chest and upper breasts. (Filing No. 88 at 15.) She had superficial burns to the "forehead and bilateral antecubital spaces." (Filing No. 88 at 15.) The records also contain a diagram which indicates that Ms. Clary had burns on chest and breast area and both inner elbows. (Filing No. 88 at 9.) In addition, Ms. Clary's medical records also include a statement that reads:

> Sometime shortly prior to arrival she was using a food steamer and says that though it got stuck. She was holding the steamer while her boyfriend was trying to get a little off. The lid popped often the hot liquid splashed onto her face and upper chest.

(Filing No. 88 at 4.)

Based on his analysis and the materials provided to him, Dr, Giachetti opined at his deposition that Ms. Clary "should have substantial burns on both forearms, which are not recorded in the medical records" if Ms. Clary had her hands on the lid as she claims. (Filing No. 84-1 at 155). "[B]oth of her forearms should just be as scalded as everywhere else where she had received burns, if not more so. [Her arms] would have been very close to where the water came out, and at a high temperature." (Filing No. 84-1 at 154-55.) At his deposition, Dr. Giachetti was presented with a photograph of Ms. Clary's injuries that show redness on her forearms, particularly her left forearm. (Filing No. 84-1 at 165-166; Filing No. 84-2). Dr. Giachetti stated he saw "redness

3

there[,]" but the medical personnel only identified burns near Ms. Clary's elbows. (Filing No. 84-1 at 166.)

## STANDARD OF REVIEW

Federal Rule of Evidence 702 and *Daubert* govern the admissibility of expert testimony and give the Court a gatekeeping responsibility to ensure that all expert evidence is relevant and reliable. *Kumho Tire Co. v. Carmichael,* 526 U.S. 137, 147 (1999); *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 589 (1993); *Sprafka v. Med. Device Bus. Servs., Inc.*, 139 F.4th 656, 660-61 (8th Cir. 2025). Rule 702 was amended in 2023 "'to clarify and emphasize that expert testimony may not be admitted unless the proponent demonstrates to the court that it is more likely than not that the proffered testimony meets the admissibility requirements set forth in the rule.'" *Sprafka*, 139 F.4th at 660 (quoting Fed. R. Evid. 702, Advisory Committee's Note to 2023 Amendment). After that amendment, "courts continue to have a gatekeeping role to assure that evidence admitted in a case is both relevant and reliable." *Id.* (quoting *Academy Bank, N.A. v. AmGuard Ins. Co*., 116 F.4th 768, 790 (8th Cir. 2024)).

"As the gatekeeper, the district court's role is to discern expert opinion evidence based on 'good grounds' from subjective speculation that masquerades as scientific knowledge." *Id.* (quoting *Ackerman v. U-Park, Inc*., 951 F.3d 929, 933 (8th Cir. 2020)). Rule 702 requires the proponent of expert testimony to demonstrate to the court that "it is more likely than not" that (1) the expert's knowledge will "help the trier of fact to understand the evidence or to determine a fact in issue;" (2) "the testimony is based on sufficient facts or data;" (3) "the testimony is the product of reliable principles and methods;" and (4) "the expert's opinion reflects a reliable application of the principles and methods to the facts of the case." Fed. R. Evid. 702.

Reliability of an expert opinion involves consideration of "(1) whether the scientific technique can be or has been tested; (2) whether the theory or technique has been subjected to peer review and/or publication; (3) the known rate of error for the technique or theory and the applicable standards for operation; and (4) whether the technique is generally accepted." *Academy Bank, N.A. v. AmGuard Ins. Co.*, 116 F.4th 768, 790 (8th Cir. 2024); *In re Bair Hugger Forced Air Warming Devices Prod. Liab. Litig.*, 9 F.4th 768, 777 (8th Cir. 2021).

Other considerations recognized since *Daubert* include "whether the experts are proposing to testify about matters growing naturally and directly out of research they have conducted independent of the litigation, or whether they have developed their opinions expressly for purposes of testifying." *Id.* (quotation omitted). These factors are not "exhaustive or limiting." *Presley v. Lakewood Eng'g & Mfg. Co.*, 553 F.3d 638, 643 (8th Cir. 2009). Nor do courts need to consider each factor in each case; factors should only be relied upon to the extent that they are relevant. *Shuck v. CNH Am., LLC*, 498 F.3d 868, 874 (8th Cir. 2007). Ultimately, courts must evaluate the reliability of expert testimony based on the facts of the case before them. *Presley*, 553 F.3d at 643. The Court has "'considerable leeway'" in determining whether "'particular expert testimony is reliable.'" *Academy Bank, N.A.*, 116 F.4th at 791.

A district court must continue to perform its gatekeeping role even after "initial expert qualifications and usefulness to the jury are established, however[.]" *Wheeling Pittsburgh Steel Corp. v. Beelman River Terminals, Inc.*, 254 F.3d 706, 715 (8th Cir. 2001). The expert's actual testimony cannot exceed the scope of the expert's expertise, which would "render expert testimony unreliable under Rule 702, *Kumho Tire*, and related precedents." *Id.* Expert opinions "must stay within the bounds of what can be concluded from a reliable application of the expert's basis and methodology." Fed. R. Evid. 702, Advisory Committee's Note to 2023 Amendment. Experts should not make unsupported assertions admittedly beyond their area of expertise. *See Anderson v. Raymond Corp.*, 340 F.3d 520, 524 (8th Cir. 2003) (upholding district court's decision to exclude testimony where an engineering expert was to testify to stand-up lift trucks and he admitted he was not an expert in stand-up lift trucks nor had professional experience with them) (cited by *Grummer v. Budget Truck Rental, LLC*, 5:220-CV-5177, 2024 WL 926963, at *5 (W.D. Ark. Mar. 4, 2024)).

## DISCUSSION

Ms. Clary moves to exclude Dr. Giachetti's opinion on Ms. Clary's hand placement, arguing his opinion is unreliable and based on "unsound methodology." (Filing No. 82 at 1.) Ms. Clary asserts that Dr. Giachetti's expertise as a biomechanical engineer and his methodology do not enable him to render a reliable opinion on burn injuries or a derivative opinion on the placement of Ms. Clary's hands based on her burn injuries. (Filing No. 82.) The issue before the Court is

5

not whether Dr. Giachetti is qualified to testify as an expert generally, but whether his proffered opinion on Ms. Clary's hand placement is within his expertise.

Ms. Clary primarily relies on a prior case in which Dr. Giachetti's expert testimony was excluded because of unreliable methodology. In *Williams v. Tristar Prods., Inc.*, another case arising from a pressure cooker explosion, the court excluded Dr. Giachetti's proffered opinion on the plaintiff's arm placement at the time of the explosion. 418 F. Supp. 3d 1212 (M.D. Ga. Aug. 27, 2019). There, the plaintiff did not challenge Dr. Giachetti's engineering qualifications. *Id.* at 1223. The plaintiff contended Dr. Giachetti's opinions were irrelevant and unreliable because Dr. Giachetti relied on an examination of photographs of the plaintiff's burn injuries to theorize how "scalding liquid came to be on [the p]laintiff's skin and whether those burn patterns would be consistent with her testimony." *Id.* at 1224.

The plaintiff in *Williams* argued Dr. Giachetti had inconsistent evidence to establish that the burns were more consistent with her forcing the lid of the pressure cooker open and spilling the contents on herself than an explosion of hot contents onto her skin. *Id.* Dr. Giachetti stated a lack of burns on the plaintiff's right elbow supported his hypothesis that she had tried to force open the subject cooker. *Id.* However, the plaintiff did have burns on her right elbow. *Id.* Dr. Giachetti also admitted he did not consider what clothing the plaintiff was wearing at the time of the incident and contended it was irrelevant. *Id.* The court noted, "Some clothing is more protective than others[,]" and expressed concerns that burn patterns would be different depending on the clothing worn. *Id.* Finally, Dr. Giachetti's opinion that the pressure cooker was forcibly opened directly conflicted with the plaintiff's "consistent and repeated testimony" that she did not forcibly open the pressure cooker. *See id.*

The court in *Williams* deemed Dr. Giachetti's opinion "mere speculation" and found that his analysis of her burn injuries were not "sufficiently based on scientific fact or reliable methodology and should be excluded from trial." *Id.* With the plaintiff's consent, the court allowed Dr. Giachetti to testify to his theory as to how the incident occurred but excluded "any opinions based on his evaluation of Plaintiff's burn injuries." *Id.*

Ms. Clary argues that the facts in this case are sufficiently similar for this Court to exclude Dr. Giachetti's opinion on Ms. Clary's hand placement. (Filing No. 82 at 3-4.) First, Ms. Clary

contends Dr. Giachetti relied on inconsistent evidence to develop his opinion because the photograph of Ms. Clary's injuries "clearly demonstrates" Ms. Clary had burns on her forearms. (Filing No. 82 at 4.) Second, Ms. Clary contends Dr. Giachetti failed to adequately consider or test the effect of Ms. Clary's clothing at the time of the incident on the severity of her burns. (Filing No. 82 at 4.) Finally, Ms. Clary contends that the study Dr. Giachetti conducted did not account for the trajectory of the lid and the pressure cooker's contents when the user had her hands on the lid, like Ms. Clary has repeatedly testified. (Filing No. 82 at 5.)

Tristar argues that the court's reasoning in *Williams* does not apply to Dr. Giachetti's testimony here. First, Tristar contends that Dr. Giachetti relied on the medical records, which did not diagnose burns to her forearms or hands. (Filing No. 85 at 14.) Further, Tristar contends the burns that are apparent from the photographs are not "severe," and Dr. Giachetti's opinion is based on a lack of severe burns to Ms. Clary's forearms and hands. (Filing No. 85 at 3, 5-6.) Second, Tristar argues that Ms. Clary's clothing at the time of the incident is irrelevant. (Filing No. 85 at 15.) Dr. Giachetti stated that Ms. Clary suffered burns to clothed and unclothed areas, which indicated that her shirt was "not protective." (Filing No. 86-8 at 4.) Therefore, whether the shirt was long-sleeved or short-sleeved would not have affected whether she would have been severely burned if "her hands and forearms were in the direct path of the broadly ejecting contents." (Filing No. 86-8 at 4.) Finally, Tristar asserts that Dr. Giachetti relied on the medical records in forming his theory on hand placement, and the medical record indicates Ms. Clary said her boyfriend opened the pressure cooker while she held the pressure cooker down. (Filing No. 85 at 14.) This purported statement, along with the medical records, photographs, product testing, and Dr. Giachetti's article, provided sufficient facts for Dr. Giachetti to form an opinion on Ms. Clary's hand placement. (Filing No. 85 at 14.)

Additionally, Tristar distinguishes *Williams* insofar as Dr. Giachetti has published new research that supports his theory on content dispersal and hand placement. (Filing No. 85 at 18-19.) At the time *Williams* was published in 2019, Dr. Giachetti's article in Journal of Burns had not yet been published. (Filing No. 84-4). This article is peer-reviewed and provides direct support for his theory that Ms. Clary's arms would have been in the direct path of the pressure cooker's exploding contents if her hands were on the lid. (Filing No. 84-4). Tristar cites a later court opinion from the same district, *Copeland v. Tristar Prods., Inc.*, 5:22-CV-00212 (CAR), which

7

admitted similar expert testimony by Dr. Giachetti after publication of his article. (Filing No. 85 at 18; Filing No. 86-9.) Specifically, the Court allowed Dr. Giachetti to testify that the contents from a pressure cooker would have shot out horizontally and radially, which was consistent with Dr. Giachetti's opinion on the decedent-user's hand placement. (Filing No. 85 at 18-19; Filing No. 86-9.)

The Court agrees that Dr. Giachetti is qualified to testify as to the trajectory of the pressure cooker's expulsed contents based on burn placement. His analysis based on burn placement is based on sufficiently reliable methodology. As Dr. Giachetti outlined, his analysis was premised on two scientific facts (1) hot fluids burn skin, and (2) fluids cannot permeate the solid walls of a pressure cooker. Based on his scientific study, which was peer-reviewed, Dr. Giachetti determined the trajectory of the expulsed fluids would have contacted Ms. Clary's hands had they been on the lid at the time of the explosion. Because Ms. Clary's shirt was not protective of other areas of skin, whether the shirt was long-sleeved or short-sleeved was irrelevant to Dr. Giachetti's analysis.

Dr. Giachetti has premised his opinion on the placement of Ms. Clary's hands during the incident on the location of "severe burns" on her body. Unlike in *Williams*, Dr. Giachetti has not ignored an established fact as to the placement of Ms. Clary's severe burns. Here, the University of Nebraska Medical Center did not diagnose burns to Ms. Clary's forearms or hands, and the medical records did not indicate any burns to her forearms or hands. Therefore, he did not rely on inconsistent or incorrect evidence to form his opinion as he had in *Williams*.

As a result, the Court finds that Defendant has shown that it is more likely than not that Dr. Giachetti expert knowledge will help the jury understand the evidence and help them determine how this accident happened. Dr. Giachetti's opinions are based on sufficient facts and data, are the product of reliable principals and methods, and reflect a reliable application of the principles and methods to the facts of the case. Therefore, Dr. Giachetti may testify as to Ms. Clary's hand placement based on the trajectory of the pressure cooker's expulsed contents and the location of Ms. Clary's burns.

However, the Court is concerned about any potential testimony that would have Dr. Giachetti diagnose the degree of burns to Ms. Clary's forearms. Tristar contends that the photograph of Ms. Clary's burns indicates that the potential burns on her arms are not "severe,"

and Dr. Giachetti "explained the minor burns to her left forearm (redness) should be as severe as her other burns if she opened the unit." (Filing No. 85 at 15, 14.) As Ms. Clary aptly highlighted, Dr. Giachetti is not a medical professional, and his 2020 testing did not establish the severity of burns that would occur in a pressurized explosion. (Filing No. 94 at 4-6; Filing No. 84-4.) This Court is not satisfied that Dr. Giachetti's expertise in biomechanical engineering enables him to make any burn diagnoses additional to those made by the medical professionals at University of Nebraska Medical Center, even if to diagnose the burns to Ms. Clary's forearms as minor. Dr. Giachetti's background and experience does not indicate that he has the qualifications or experience to diagnose burns. Indeed, Dr. Giachetti agrees that he is not qualified to make medical diagnoses or conduct "burn pattern" analysis. (*See* Filing No. 86-8 at 3.) Therefore, this Court will exclude any testimony as to Dr. Giachetti's diagnosis of Ms. Clary's injuries or any opinion based on Dr. Giachetti's diagnosis of Ms. Clary's injuries.

Accordingly,

**IT IS ORDERED:**

1. Plaintiff's Motion to Exclude Testimony of Robert Giachetti, Ph.D. (Filing No. 81) is granted in part and denied in part.
2. Defendant may not present any expert testimony from Dr. Giachetti on any medical diagnosis not made by medical professionals or any testimony derived from his own diagnosis of Ms. Clary's burns.
3. Dr. Giachetti may testify to his opinion on Ms. Clary's hand placement at the time of the explosion based on the location of her burns identified in her medical records.

Dated this 5th day of November, 2025.

BY THE COURT:

_____
Susan M. Bazis
United States District Judge